UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

———————————————————————————

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| MOMENTUM INVESTMENT PARTNERS LLC | ) | JURY TRIAL DEMANDED |
| (D/B/A AVATAR INVESTMENT | ) | |
| MANAGEMENT) and RONALD J. FERNANDES, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

——————————————————————————— )

## COMPLAINT

Plaintiff Securities and Exchange Commission ("the Commission") alleges the following against defendants Momentum Investment Partners LLC (doing business as Avatar Investment Management) ("Avatar") and Ronald J. Fernandes ("Fernandes") and demands a jury trial:

## PRELIMINARY STATEMENT

1.      In May 2013, Avatar, an investment adviser based in Stamford, Connecticut, and its founder and CEO Fernandes, failed to disclose material conflicts of interest in connection with investments Avatar made in new mutual funds that Avatar created and managed. Specifically, Avatar and Fernandes failed to disclose that moving clients' assets into the newly-created mutual funds would increase the total clients' advisory fees paid to Avatar without changing the clients' investment strategy.  As a result, between May 2013 and March 2014, Avatar's clients paid almost $111,000 in total additional fees, including approximately $61,000 in additional fees ultimately paid to Avatar, for no additional services.

2.      In early 2013, Avatar was managing 20 investment accounts for approximately eight families.  Avatar offered the same proprietary investment strategy to all clients.  Avatar's strategy consisted of investing clients' assets in a mix (allocation) of holdings in various well-known Exchange Traded Funds (ETFs).  In exchange for utilizing Avatar's account management services and proprietary investment strategy, the clients paid annual management fees to Avatar of between 0.10% and 0.60% of their assets managed by Avatar.

3.      Fernandes and Avatar created four mutual funds for Avatar to advise and manage, with an investment strategy that mirrored the Avatar ETF investment strategy.  In addition, Avatar's mutual funds carried annual management fees, ranging from 1.15% to 1.45% of the assets under management. Avatar, as adviser to the mutual funds, received the majority of these management fees.

4.       Fernandes and Avatar transferred approximately $11 million in assets from the family accounts into the newly-created Avatar mutual funds in May 2013.  As a result, Avatar's clients were exposed to an equivalent investment strategy as when they were invested directly in ETFs, but Avatar now received two sets of fees, one for advising the family accounts and a second for advising the Avatar mutual funds into which the clients' funds had been moved.  The clients paid approximately $111,000 in total additional fees (including approximately $61,000 in additional fees ultimately paid to Avatar), but the clients received no additional services from Avatar.

5.      When Avatar and Fernandes transferred the families' assets into the mutual funds, they failed to inform their clients of the material conflict of interest associated with causing the clients to pay higher fees to Avatar for the equivalent service and investment strategy as before.

6.      Through the activities alleged in this Complaint:

(a) Avatar and Fernandes engaged in fraudulent or deceptive conduct with respect to investment advisory clients in violation of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act");

(b) Avatar also engaged in (i) fraudulent or deceptive conduct with respect to investment advisory clients, in violation of Section 206(4) of the Advisers Act and Rule 206(4)-7 thereunder, and (ii) the making of untrue statements of material fact in reports filed with the Commission, in violation of Section 207 of the Advisers Act; and

(c) Fernandes aided and abetted Avatar's violations of Sections 206(1), 206(2), 206(4) and 207 of the Advisers Act and Rule 206(4)-7 thereunder.

7.      Accordingly, the Commission seeks: (a) permanent injunctions prohibiting Avatar and Fernandes from further violations of the relevant provisions of the federal securities laws; (b) disgorgement of ill-gotten gains, plus pre-judgment interest; and (c) civil penalties due to the egregious nature of the violations.

## **JURISDICTION**

8.      The Commission seeks permanent injunctions and disgorgement pursuant to Section 209(d) of the Advisers Act [15 U.S.C. §80b-9(d)].  The Commission seeks civil penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. §80b-9(e)].

9.      This Court has jurisdiction over this action pursuant to Sections 209(d), 209(e) and 214 of the Advisers Act [15 U.S.C. §§80b-9(d), 80b-9(e), 80b-14].  Venue is proper in this District because, at all relevant times, Avatar was located in Stamford, Connecticut and Fernandes worked there.

10.     In connection with the conduct described in this Complaint, Avatar and Fernandes directly or indirectly made use of the mails or the means or instruments of transportation or communication in interstate commerce.

3

11.     Avatar and Fernandes's conduct involved fraud, deceit, or deliberate or reckless disregard of regulatory requirements, and resulted in substantial loss, or significant risk of substantial loss, to other persons.

## DEFENDANTS

12.     **Ronald J. Fernandes** ("Fernandes"), age 58, currently lives in Orleans, Massachusetts. He founded Avatar in August 2011 and served as its Chief Executive Officer (CEO) and co-Chief Investment Officer (CIO).

13.     **Momentum Investment Partners LLC dba Avatar Investment Management** ("Avatar"), was an investment adviser registered with the Commission from August 17, 2011 until March 31, 2014, when Avatar withdrew its registration.  From August 2011 to December 2012, Avatar was headquartered in New York, New York.  In January 2013, Avatar moved its headquarters to Stamford, Connecticut.   In May 2013, Avatar transferred approximately $11 million of its client assets from approximately 20 separate accounts it advised into four newly created mutual funds that Avatar also advised: the Avatar Capital Preservation Fund, the Avatar Tactical Multi-Asset Income Fund, the Avatar Absolute Return Fund, and the Avatar Global Opportunities Fund (collectively, the "Avatar Mutual Funds").

## FACTUAL ALLEGATIONS

### Defendants Transfer Avatar Client Assets into Newly-Created Avatar Mutual Funds

14.     In early 2013, Avatar was advising and managing approximately 20 individual accounts from eight different families of investors (the "Avatar Family Clients") using a proprietary investment strategy of allocating client assets in ETFs representing various industry sectors.  These Avatar Family Client accounts paid management fees to Avatar for managing the accounts and utilizing the proprietary investment strategy.  The annual fees ranged from 10-60 "basis points" of assets under

management, with 12 client accounts paying 60 basis points, 7 client accounts paying 30 basis points, and 1 client account paying 10 basis points.  A basis point is equal to $1/100^{th}$ of 1% (or 0.01%).  Therefore, 60 basis points is equal to 0.60%.

15.     Fernandes and Avatar decided to create the Avatar Mutual Funds for Avatar to advise and manage, using an investment strategy that mirrored its ETF investment strategy.  In other words, the Avatar Mutual Funds used equivalent proprietary allocation models to allocate investments to particular sectors of the economy.  The Avatar Mutual Funds also charged annual management fees ranging from approximately 1.15% to 1.45% of assets under management.  As a result of advising the Avatar Mutual Funds, Avatar received the majority of these management fees.  Avatar launched the Avatar Mutual Funds on March 7, 2013.

16.     At the end of April 2013, the Avatar Family Clients had a total of approximately $16,198,535 managed by Avatar.  In May 2013, Avatar and Fernandes transferred Avatar Family Client funds out of the individual ETFs they were invested in and into the Avatar Mutual Funds.  Avatar liquidated approximately 65% to 70% of each client's total investment managed by Avatar (approximately $11,185,512 in all) and moved these funds into the Avatar Mutual Funds.

17.     After the transfer, each client was exposed to an equivalent investment strategy as they were when invested directly in ETFs, but the move from ETFs to mutual funds caused these clients to pay higher fees and enabled Avatar to receive additional compensation for implementing an equivalent investment strategy.  When Avatar moved the Avatar Family Clients to the Avatar Mutual Funds, the clients continued to pay Avatar the annual fee of 10-60 basis points for managing their separate accounts.  In addition, the Avatar Family Clients paid separate and additional mutual fund fees.  Thus, as a result of Avatar moving the Avatar Family Clients into mutual funds managed by Avatar, Avatar required the Avatar Family Clients to pay 1.15% to 1.45% in higher fees for no additional services and

5

for investing in an equivalent investment strategy. Because Avatar advised the mutual funds, Avatar received the majority of these additional fees.

18.     Prior to moving the Avatar Family Client funds into the Avatar Mutual Funds, neither Avatar nor Fernandes notified the Avatar Family Clients: (i) that their funds were being moved into the Avatar Mutual Funds or (ii) that they would pay additional management fees to Avatar for no additional services once their funds were invested in the mutual funds.

19.     Although the Avatar Family Clients were only invested in the Avatar Mutual Funds for less than one year before the funds were closed and liquidated in March 2014, the Avatar Family Clients paid approximately $111,000 in additional fees that they would not have paid had they remained invested directly in the ETFs, including advisory fees, state registration fees, and operating fees.  Because Avatar advised the mutual funds, Avatar received approximately $61,000 of these additional fees, as illustrated by the following chart:

| Avatar Mutual Fund | Avatar Family Clients' funds held | Net excess management fees paid to Avatar | Other Excess fees paid | Total excess fees paid by Family Clients |
|---|---|---|---|---|
| Avatar Tactical Multi Asset Fund | $2,247,939 | $11,411 | $9,790 | $21,201 |
| Avatar Global Opportunities Fund | $3,647,683 | $15,026 | $10,890 | $25,916 |
| Avatar Capital Preservation Fund | $2,508,441 | 12,251 | $11,911 | $24,162 |
| Avatar Absolute Return Fund | $2,781,449 | $22,875 | $16,473 | $39,348 |
| **Total:** | $11,185,512 | **$61,563** | $49,064 | **$110,627** |

20.     Although Avatar and Fernandes moved the family clients' funds in order to use them as seed capital for the Avatar Mutual Funds, Avatar was not successful in raising additional assets for the Avatar Mutual Funds.  By June 30, 2013, the only shareholders on record for the Avatar Mutual Funds were Avatar's Chief Operating Officer and the Avatar Family Clients.

21.     Despite the potential compliance risks and conflicts of interest associated with moving the Avatar Family Client funds into the Avatar Mutual funds, Avatar did not have policies or procedures to address this potential conflict of interest.

**Avatar Files Misleading Disclosures with the Commission**

22.     Investment advisers registered with the Commission (such as Avatar) are required to submit to the Commission a "Form ADV." This form, which must be updated annually and made available as a public record, provides disclosures to advisory clients and includes information such as services provided and fees levied.

23.     The instructions for Part 2 of the Form ADV state: "As a fiduciary, you also must seek to avoid conflicts of interest with your clients, and, at a minimum, make full disclosure of all material conflicts of interest between you and your clients that could affect the advisory relationship. This obligation requires that you provide the client with sufficiently specific facts so that the client is able to understand the conflicts of interest you have and the business practices in which you engage, and can give informed consent to such conflicts or practices or reject them."

24.     Avatar's Form ADV, filed on March 11, 2013 ("Avatar's Form ADV"), contained various false, misleading or insufficient disclosures concerning Avatar's conflicts of interest in investing Avatar Family Clients in the Avatar Mutual Funds.

25.     With respect to the fees Avatar charged to Avatar Family Clients for their investments in the Avatar Mutual Funds, Item 5.C of Avatar's Form ADV Part 2A (captioned "Fees and Compensation/Other Fees and Expenses") stated:

> In addition, all fees paid to Avatar for investment advisory services are separate and distinct from the expenses charged by mutual funds and exchange-traded funds to their shareholders, if applicable. These fees and expenses are described in each fund's prospectus. These fees and expenses will generally be used to pay Management Fees for the funds, other fund expenses, account administration (e.g., custody, brokerage and account reporting), and a possible distribution fee. A Client could invest in these

> products directly, without the services of Avatar, but would not receive the services
> provided by Avatar which are designed, among other things, to assist the Client in
> determining which products or services are most appropriate to each Client's financial
> situation and objectives.  Accordingly, the Client should review both the fees charged
> by the fund[s] and the fees charged by Avatar to fully understand the total fees to be
> paid.

This statement was misleading because it failed to specify that Avatar received (and clients

paid) additional mutual fund management fees by moving Avatar Family Client assets into the

Avatar Mutual Funds, even though no additional services were provided.

26.     Item 5.E of Avatar's Form ADV Part 2A (captioned "Compensation for Sales of

Securities") stated, "Avatar does not buy or sell securities and does not receive any compensation for

securities transactions in any Client account, other than the Management Fees noted above."  This

statement was false or misleading because Avatar did not disclose that it received (and clients paid)

additional compensation from the Avatar Family Clients by moving their assets into the Avatar Mutual

Funds.

27.     Item 14.A of Avatar's Form ADV Part 2A (captioned "Compensation Received by

Avatar) stated, "Avatar also serves as the portfolio manager of the Avatar mutual funds, where

additional compensation may be received if a Client invests in one or more of the funds, either directly

or indirectly."  This statement was misleading because it did not disclose Avatar's conflict of interest

when Avatar chose to transfer its own clients' assets into the Avatar Mutual Funds without providing

additional services to the clients.  Moreover, the statement did not disclose that if any Avatar Family

Clients voluntarily chose to invest in the Avatar Mutual Funds they would be exposed to an equivalent

investment strategy as they had been when investing directly in the ETFs, but would pay Avatar higher

compensation because of the additional fund management fees.

## FIRST CLAIM FOR RELIEF
### Violation of Sections 206(1) and 206(2) of the Advisers Act
### (Avatar and Fernandes)

28.     The Commission repeats and incorporates by reference the allegations in paragraphs 1-27 above.

29.     At all relevant times, both Avatar and Fernandes were "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. §80b-2(a)(11)].

30.     Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§80b-6(1), 80b-6(2)] provide that it is unlawful for an investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly:  (1) to employ any device, scheme, or artifice to defraud a client or prospective client; or (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon a client or prospective client.

31.     As set forth above, Avatar and Fernandes transferred approximately $11 million in assets from approximately 20 separate accounts that Avatar advised into four mutual funds that Avatar created and also advised.  Avatar and Fernandes failed to disclose to their clients that Avatar had a material conflict of interest because Avatar received higher management fees from the clients by moving their assets into Avatar's mutual funds without providing additional services to the clients.

32.     As a result, Avatar and Fernandes violated and, unless enjoined, will continue to violate Sections 206(1) and 206(2) of the Advisers Act.

## SECOND CLAIM FOR RELIEF
### Violation of Section 206(4) of the Advisers Act and Rule 206(4)-7
### (Avatar)

33.     The Commission repeats and incorporates by reference the allegations in paragraphs 1-27 above.

34.     Section 206(4) of the Advisers Act [15 U.S.C. §80b-6(4)] provides that it is unlawful for an investment adviser to engage in an act, practice, or course of business which is fraudulent,

deceptive, or manipulative, and that the Commission shall issue rules to define and prescribe measures to prevent such misconduct.  Rule 206(4)-7 issued under the Advisers Act [17 C.F.R. §275.206(4)-7] requires investment advisers to adopt and implement written policies and procedures reasonably designed to prevent violations of the Advisers Act and its rules.

35.     As described above, Avatar's creation of the Avatar Mutual funds caused a potential conflict of interest and inherent risk that Avatar might move the Avatar Family Clients into the Avatar Mutual Funds solely to generate higher fees without providing a different investment strategy or service to these clients.  Avatar failed to adopt or implement any written policies or procedures reasonably designed to prevent this potential conflict of interest or inherent risk.

36.     As a result, Avatar violated and, unless enjoined, will continue to violate Section 206(4) of the Advisers Act and Rule 206(4)-7 thereunder.

### THIRD CLAIM FOR RELIEF
### Violation of Section 207 of the Advisers Act
### (Avatar)

37.     The Commission repeats and incorporates by reference the allegations in paragraphs 1-27 above.

38.     Section 207 of the Advisers Act [15 U.S.C. §80b-7] provides that it is unlawful for any person willfully to make any untrue statement of a material fact in any registration application or report filed with the Commission under Section 203 of the Advisers Act, or to omit to state in any such application or report any material fact which is required to be stated therein.

39.     The Form ADV is a report filed with the Commission under Section 203 of the Advisers Act.  As stated above, Avatar's Form ADV contained material misrepresentations and omissions to the effect that Avatar failed to disclose its conflict of interest associated with moving the Avatar Family Clients' funds into the Avatar Mutual Funds and thereafter receiving higher fees, even though the clients did not receive any different investment strategy or other benefit as a result.

10

40.     As a result, Avatar violated and, unless enjoined, will continue to violate Section 207 of the Advisers Act.

## FOURTH CLAIM FOR RELIEF
### Aiding and Abetting Avatar's Violations of
### Sections 206(1), 206(2), 206(4), and 207 of the Advisers Act and Rule 206(4)-7
### (Fernandes)

41.     The Commission repeats and incorporates by reference the allegations in paragraphs 1-27 above.

42.     As set forth above, Fernandes made the decision to transfer approximately $11 million in assets from approximately 20 client accounts Avatar advised into four newly created mutual funds that Avatar also advised, without disclosing to the clients that Avatar had a material conflict of interest because Avatar would receive higher management fees from the clients even though the clients did not receive a different investment strategy or other benefit as a result.  Fernandes therefore aided and abetted Avatar's violations because his decisions resulted in Avatar: (i) moving client assets into the newly created mutual funds without disclosing that Avatar had a material conflict of interest because Avatar would receive higher management fees from the clients without receiving any additional benefit; (ii) failing to adopt or implement written policies or procedures reasonably designed to prevent this potential conflict of interest or inherent risk; and (iii) submitting to the Commission a Form ADV containing material misrepresentations and omissions by failing to disclose Avatar's conflicts of interest.

43.     As a result, Avatar violated Sections 206(1), 206(2), 206(4), and 207 of the Advisers Act and Rule 206(4)-7 thereunder, and Fernandes aided and abetted Avatar's violations.

## PRAYER FOR RELIEF

WHEREFORE, the Commission requests that this Court:

A.       Enter a permanent injunction restraining Avatar and Fernandes and each of their agents, servants, employees, and attorneys and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect, in violation of:

1.       Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§80b-6(1), 80b-6(2)];

2.       Section 206(4) of the Advisers Act [15 U.S.C. §80b-6(4)] and Rule 206(4)-7 [17 C.F.R. §275.206(4)-7;  and

3.       Section 207 of the Advisers Act [15 U.S.C. §80b-7];

B.       Require Avatar and Fernandes, on a joint and several basis, to disgorge their ill-gotten gains, plus pre-judgment interest;

C.       Order Avatar and Fernandes to each pay an appropriate civil penalty pursuant to Section 209(e) of the Advisers Act [15 U.S.C. §80b-9(e)];

D.       Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

E.       Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

David H. London (Mass. Bar. No. 638289,
    CT phv-02133)
    Senior Counsel
Robert B. Baker (Mass. Bar. No. 654023)
    Assistant Regional Director
Lawrence W. Pisto (Mass. Bar No. 555317)
    Senior Counsel
Martin F. Healey (Mass. Bar. No. 227550)
    Senior Trial Counsel
**SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch Street, 24th Floor
Boston, Massachusetts  02110
Telephone:  (617) 573-8997 (London direct)
Facsimile:  (617) 573-4590
LondonD@sec.gov (London email)

Local Counsel:

/s/ John B. Hughes
John B. Hughes (Fed. Bar No. CT 05289)
Assistant United States Attorney
Chief, Civil Division
United States Attorney's Office
Connecticut Financial Center
157 Church Street, 23rd Floor
New Haven, CT 06510
(203) 821-3700
(203) 773-5373 (Facsimile)

Dated:  May 31, 2016